614 S.E.2d 636

Mary M. SLACK and Stephen H. Slack, Petitioners,

v.

Lonnie JAMES and Shannon James, Respondents.

No. 25998.

Supreme Court of South Carolina.

Heard Feb. 16, 2005.
Decided June 6, 2005.

610

Richard S. Rosen and Daniel F. Blanchard, III, of Rosen, Rosen & Hagood, L.L.C., of Charleston, for petitioners.

Stanley C. Rodgers, of Law Offices of Stanley C. Rodgers, L.L.C., of Charleston, for respondents.

Justice MOORE:

We granted a writ of certiorari to review the Court of Appeals' decision reversing the trial court's order granting a motion to dismiss counterclaims made by respondents. *Slack v. James*, 356 S.C. 479, 589 S.E.2d 772 (Ct.App.2003). We affirm the Court of Appeals.

## FACTS

Petitioners (Sellers) and respondents (Buyers), each represented by real estate agents, entered into a written contract for the sale of Sellers' home for $1,208,000. The sales contract includes the following provisions:

14. ENCUMBRANCES AND RESTRICTIONS. Buyer agrees to accept property subject to: ... restrictive covenants and easements of record, provided they do not materially affect present use of said property.

21. ENTIRE AGREEMENT. This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller. It can only be changed by a subsequent written instrument (Addendum) signed by both parties. Both Buyer and Seller hereby acknowledge that they have not

received or relied upon any statements or representations by either Broker or their agents which are not expressly stipulated herein.

After entering into the contract, Buyers hired an attorney to represent them during the closing. In conducting a title examination of the property, the title examiner informed Buyers' attorney that there was a permanent four-inch sewer easement across the property. After this discovery, Buyers refused to purchase the property because, prior to entering into the written contract, Buyers had asked Sellers' real estate agent whether there were any easements on the property and the agent informed them none existed.

Sellers brought a breach of contract action against Buyers after they refused to purchase Sellers' home pursuant to the purchase contract. Buyers brought counterclaims against Sellers alleging breach of contract, fraud, negligent misrepresentation, and violations of the South Carolina Unfair Trade Practices Act (UTPA).

The trial court granted Sellers' motion to dismiss Buyers' counterclaims as to the claims for fraud, negligent misrepresentation, and violations of UTPA, and struck portions of the breach of contract claim. The trial court found the alleged oral statements regarding the existence of easements on the property that allegedly occurred prior to the execution of the parties' written contract should be stricken based on the parol evidence rule and the merger doctrine. The trial court's order did not affect the remaining portions of the breach of contract counterclaim that alleged Sellers breached the terms of the written contract.[1] The trial court further found Buyers failed to exercise reasonable diligence to protect their interests and had no right to rely on the real estate agent's alleged misrep-

---

1. In effect, Buyers could still assert their right to terminate the contract because they were not required to purchase the property if an easement, such as the sewer line easement, "materially affect[ed the] present use of said property." The Court of Appeals, when stating the facts of the case, improperly stated the sewer line easement materially affected the present use of the property. This statement by the Court of Appeals is a conclusion on an issue that was not before the court because Buyers' breach of contract counterclaim on this point was allowed to go forward by the trial court.

resentation as to the existence of the sewer line easement. The Court of Appeals reversed.

## ISSUES

I. Did the Court of Appeals err by finding Buyers did not have a duty to investigate the truthfulness of an alleged misrepresentation by Sellers' real estate agent?

II. Did the Court of Appeals err by finding Paragraph 21 of the purchase contract to be a merger clause rather than a non-reliance clause?

## DISCUSSION

### I

■ The Court of Appeals, relying almost exclusively on its opinion in *Reid v. Harbison Dev't Corp.,* 285 S.C. 557, 330 S.E.2d 532 (Ct.App.1985), *aff'd in part,* 289 S.C. 319, 345 S.E.2d 492 (1986), reversed the trial court's order. The Court of Appeals found that, while Buyers could have ascertained the existence of the easement through investigation of public records, their failure to do so does not preclude them from asserting a tort claim for fraud or negligent misrepresentation. The court held the question of whether Buyers could reasonably rely on the statement at issue in view of the information entered upon the public record is for a jury, not the court, to determine.

Sellers argue the Court of Appeals erred by relying on their opinion in *Reid v. Harbison Dev't Corp.* to find Buyers did not have a duty to investigate the public records to check the accuracy of the Sellers' agent's alleged pre-contract oral statement.

In *Reid v. Harbison Dev't Corp.,* the Reids brought an action against Harbison alleging fraud and deceit arising out of a real estate contract. The Reids alleged they were told that Harbison would own and maintain an adjacent pond. However, Harbison, when deeding the lot to a builder who then would deed the lot to the Reids, included a restrictive covenant reserving Harbison's right and stating its intent to convey the pond to a homeowners' association. Membership in the association was to be mandatory for purchasers of the

lots. A declaration, which subjected the Reids' lot to the restrictions of a newly formed homeowner's association, was recorded the day of the Reids' closing.

During the closing, the Reids learned for the first time of the homeowner's association. They hesitated in continuing with the closing, but Harbison and the builder assured them the association would be formed in the future and membership would be optional. A year after purchasing the property, the Reids learned membership in the homeowners' association was mandatory and they were financially responsible for their share of the pond's upkeep.

The Court of Appeals found there was evidence upon which the jury could reasonably have found the Reids did not have actual knowledge of Harbison's misrepresentations, that they were induced to refrain from discovering the true facts, and that they acted with reasonable prudence in entering into the contract and accepting the deed. The court noted that, at the time the representations relied on were made, no instrument had been recorded in the public record; and that the Reids were laymen and would have required the assistance of an expert to ascertain from the public records the truth of Harbison's representation.[2]

While *Reid* is factually distinguishable from the instant case, the Court of Appeals did not err by relying on *Reid* and concluding there was a question of fact whether Buyers had reasonably relied on the alleged misrepresentation. We note that when ruling on a motion to dismiss a counterclaim, the question is whether, in the light most favorable to the

---

2. The Court of Appeals cited *Restatement (Second) of Torts* § 540 (1979), which states that generally, as between the parties, the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation. *Restatement (Second) of Torts* § 540 is inconsistent with state law. The restatement suggests that a recipient of a fraudulent misrepresentation of fact is always justified in relying upon its truth and not conducting his own investigation. This is not the case in South Carolina. *See, e.g., Florentine Corp., Inc. v. PEDA I, Inc.,* 287 S.C. 382, 339 S.E.2d 112 (1985) (determination of what constitutes reasonable diligence must be made on case by case basis); *Watts v. Monarch Bldrs., Inc.,* 272 S.C. 517, 252 S.E.2d 889 (1979) (no evidence of fraud where buyers relied on seller's agent's representation about property lines instead of conducting their own investigation).

complainant, and with every doubt resolved in his behalf, the counterclaim states any valid claim for relief. *Cf. Toussaint v. Ham,* 292 S.C. 415, 357 S.E.2d 8 (1987) (ruling on 12(b)(6) motion to dismiss must be based solely upon allegations set forth on the face of complaint and motion cannot be sustained if facts alleged and inferences reasonably deducible therefrom would entitle plaintiff to any relief on any theory of the case). The counterclaim should not be dismissed merely because the court doubts the complainant will prevail in the action. *Cf. Toussaint v. Ham, supra* (question is whether in light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief).

The Court of Appeals properly found a question of fact exists as to whether Buyers' reliance on the misrepresentation was reasonable although the falsity of the alleged misrepresentation could have been ascertained by examining the public records. *See Unlimited Servs., Inc. v. Macklen Enters., Inc.,* 303 S.C. 384, 401 S.E.2d 153 (1991) (general rule is that questions concerning reliance and its reasonableness are factual questions for the jury); *Florentine Corp., Inc. v. PEDA I, Inc.,* 287 S.C. 382, 339 S.E.2d 112 (1985) (right to rely must be determined in light of representee's duty to use reasonable prudence and diligence under the circumstances; determination of what constitutes reasonable diligence and prudence must be made on case by case basis). The sewer line easement is not easily discoverable without research by an expert such as an attorney. *Cf. Thomas v. Jeffcoat,* 230 S.C. 126, 94 S.E.2d 240 (1956) (buyer, relying on representations by seller's agents that lot was high in front but level, agreed to purchase the lot; court found no evidence of fraud because buyer had viewed property and failed to examine it closely as he should). *See Ex parte Watson,* 356 S.C. 432, 589 S.E.2d 760 (2003) (examining titles and preparing title abstracts constitute practicing law and therefore such activities must be conducted or supervised by licensed attorneys). *See also In re Pstrak,* 357 S.C. 1, 591 S.E.2d 623 (2004) (attorney given public reprimand for assisting in unauthorized practice of law where no lawyer examined title to real property which was subject of real estate transaction). Further, given the speedy nature of residential real estate contracts today, it is not feasible to expect a buyer to be able to research the title of the

property they are buying before entering into a contract. *But see Watts v. Monarch Bldrs., Inc.,* 272 S.C. 517, 252 S.E.2d 889 (1979) (court found no evidence of fraud where buyers did not ask attorney to review metes and bounds of property, did not have survey completed, and did not examine plat of property in public record, and instead relied on seller's agent's representation about property lines of lot buyers were purchasing). Further, in this case, as in *Reid,* the alleged misrepresentation by Sellers' agent may have induced Buyers to refrain from discovering the true facts regarding whether there were any easements on the property before entering into a contract.

Accordingly, the Court of Appeals properly found the trial court erred by finding Buyers' reliance on agent's alleged misrepresentation was unreasonable as a matter of law.

## II

■ The trial court, when dismissing Buyers' fraud claim of action, found that, as a matter of law, Buyers did not have the right to rely on the alleged oral statement by Sellers' agent because the written contract contained an express acknowledgement that Buyers had not received or relied upon any statements or representations by Sellers' agent (Paragraph 21). The Court of Appeals held the merger and disclaimer provisions in the contract, as quoted in Paragraph 21 above, did not afford any protection to Sellers against allegations of fraud and negligent misrepresentation.

■ Neither the parol evidence rule nor a merger clause in a contract prevents one from proceeding on tort theories of negligent misrepresentation and fraud. *Gilliland v. Elmwood Properties,* 301 S.C. 295, 391 S.E.2d 577 (1990). *See also Allen–Parker Co. v. Lollis,* 257 S.C. 266, 185 S.E.2d 739 (1971) (if writing was procured by words and with fraudulent intent of party claiming under it, then parol evidence is competent to prove facts which constitute fraud).[3]

---

**3.** However, breach of contract claims based on pre-contract statements or representations are precluded by the parol evidence rule. *See Gilliland, supra* (parol evidence rule prevents introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of written instrument when extrinsic evidence is to

■ Paragraph 21 of the contract, which is entitled, "EN-TIRE AGREEMENT," includes the following sentence: "Both Buyer and Seller hereby acknowledge that they have not received or *relied upon* any statements or representations by either Broker or their agents which are not expressly stipulated herein." (Emphasis added). Sellers contend the Court of Appeals erred by finding the sentence in Paragraph 21 to be a merger clause, instead of a non-reliance clause as distinguished in *Redwend Ltd. Partnership v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003).

In *Redwend*, the Court of Appeals held the following sentence in an agreement to be an extension of the merger clause and not a non-reliance clause: "Each party agrees that representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect." The court explained that a non-reliance clause would contain the words, "rely" or "reliance" and set forth a statement that the parties could not or did not rely on the representations of the other party.

Although the sentence in the contract between Sellers and Buyers uses the words "relied upon," this sentence is not a non-reliance clause as explained by the *Redwend* court. This sentence is contained in a paragraph entitled, "ENTIRE AGREEMENT," which indicates that it is merely an extension of the merger clause. The sentence is not set apart as in the Seventh Circuit Court of Appeals case that the *Redwend* court utilized for its explanation. In *Rissman v. Rissman*, 213 F.3d 381 (7th Cir.), *cert. dismissed*, 531 U.S. 987, 121 S.Ct. 508, 148 L.Ed.2d 450 (2000), the federal court of appeals held a written anti-reliance clause in a stock-purchase agreement precludes any claim of deceit by prior representations. In *Rissman*, the agreement contained several non-reliance statements.[4] However, in the instant case, there is only one

---

be used to contradict, vary, or explain written instrument; this is especially true when written instrument contains merger or integration clause). Therefore, the Court of Appeals correctly stated the law. However, the pertinent question is whether a certain sentence in Paragraph 21 is part of the merger clause rather than a separate non-reliance clause.

4. The statements were as follows:

sentence concerning reliance upon representations and this sentence is contained within the merger clause. Sellers' argument regarding *Redwend* and non-reliance clauses is without merit because the purchase contract does not in fact contain such a clause.

 However, even if the sentence could be considered to be a non-reliance clause, we find the result would be the same because as a non-reliance clause it lacks the required specificity. A general non-reliance clause, just as a merger clause, does not prevent one from proceeding on tort theories of negligent misrepresentation and fraud. *See, e.g., Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F.Supp.2d 903 (W.D.Tex.2003)(illustrating nonreliance clause in franchise agreement will bar claims to extent clause specifically identifies statements not relied on, but will not always bar claims on other issues not expressly disclaimed in agreement); *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310 (2d Cir.1993) (illustrating general boilerplate nonreliance clause will not prevent fraudulent inducement suit but specific statement in contract that states party is not relying on representation as to very matter claims it was defrauded on will prevent such suit); *Miles Excavating, Inc. v. Rutledge Backhoe & Septic Tank Servs., Inc.*, 23 Kan.App.2d 82, 927 P.2d 517 (1997) (parol evidence admissible to show fraud even where contract contains provision stating parties have not relied on any representations other than those contained in

---

The parties further declare that they have not relied upon any representation of any party hereby released or of their attorneys, agents, or other representatives concerning the nature or extent of their respective injuries or damages.
. . .
(a) no promise or inducement for this Agreement has been made to him except as set forth herein; (b) this Agreement is executed by [Arnold] freely and voluntarily, and without reliance upon any statement or representation by Purchaser, the Company, any of the Affiliates or O.R. Rissman or any of their attorneys or agents except as set forth herein; (c) he has read and fully understands this Agreement and the meaning of its provisions; (d) he is legally competent to enter into this Agreement and to accept full responsibility therefor; and (e) he has been advised to consult with counsel before entering into this Agreement and has had the opportunity to do so.

(Additions omitted).

the writing). *See also Allen–Parker Co. v. Lollis, supra* (even specific provisions or stipulations in a contract providing in effect for immunity from or nullification or waiver of preliminary or extraneous misrepresentations are generally ineffective, and do not prevent subsequent assertion of misrepresentations as basis for fraud). An opposite finding "would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate." *Whelan v. Abell,* 48 F.3d 1247, 1258 (D.C.Cir.1995). A party should not be given the opportunity to free himself from an allegation of fraud by incorporating a generalized non-reliance clause into a contract.

■ The Court of Appeals correctly concluded the merger clause could not be used as a defense by Sellers against Buyers' tort actions of fraud and negligent misrepresentation. *See Gilliland v. Elmwood Props., supra* (seller should not be allowed to hide behind integration clause to avoid conse-
.quences of fraudulent or negligent misrepresentation).

## CONCLUSION

We find the Court of Appeals properly concluded that whether Buyers' reliance on the Sellers' agent's alleged misrepresentation was reasonable is a question of fact for the jury. Further, we find the Court of Appeals properly concluded that the merger clause set out in Paragraph 21 of the purchase contract could not be used as a defense by Sellers against Buyers' tort actions of fraud and negligent misrepresentation. Therefore, the decision of the Court of Appeals is

**AFFIRMED.**

WALLER, BURNETT and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL dissenting:

I respectfully dissent. In my opinion, the sales contract Buyers signed included a binding non-reliance clause. Therefore, I would reverse the court of appeals and uphold the trial court's dismissal of Buyers' fraud and misrepresentation claims. The parties' sales contract provides in part:

21. ENTIRE AGREEMENT. This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller. It can only be changed by a subsequent written instrument (Addendum) signed by both parties. **Both Buyer and Seller hereby acknowledge that they have not received or relied upon any statements or representations by either Broker or their agents which are not expressly stipulated herein.**

(Emphasis added). In the majority's view the above language solely constitutes a merger clause and not a non-reliance clause. The majority further contends that the merger clause cannot prevent Buyers from proceeding on tort theories of negligent misrepresentation and fraud citing *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577 (1990). In my opinion, the above bolded language constitutes a valid non-reliance clause.

According to the majority, the language would constitute a binding non-reliance clause only if it were included in another section of the sales contract. In my opinion, however, the majority's view renders this language entirely useless and disregards the parties' original intention as indicated by the plain meaning of the contract's language. Therefore, in my opinion, the majority has misconstrued the language of the contract.

The court of appeals has provided that a non-reliance clause would contain the words "rely" or "reliance" and set forth a statement that the parties could not rely upon the statements of the other party or a third person. *Redwend Ltd. Partnership v. Edwards*, 354 S.C. 459, 469–470, 581 S.E.2d 496, 501–502 (Ct.App.2003). In my opinion, the court of appeals' explanation of non-reliance clauses in *Redwend* is a concise description of the above emphasized language.

Accordingly, in my opinion, the trial court correctly dismissed Buyers' counterclaims for fraud and negligent misrepresentation. Buyers, as proponents of the counterclaims, had the burden to provide at least some evidence that a genuine issue of material fact existed as to each element of fraud and

negligent misrepresentation.[5] Both causes of action require Buyers to show that they relied upon the statements of Sellers' agent.[6] However, Buyers effectively waived the right to argue reliance when they signed the sales contract. Therefore, as a matter of law, Buyers cannot satisfy each element of fraud and negligent misrepresentation.

Accordingly, I would reverse the court of appeals and uphold the trial court's order dismissing Buyers' counterclaims for fraud and negligent misrepresentation.

---

**5.** *See Cole v. South Carolina Electric and Gas, Inc.*, 355 S.C. 183, 194, 584 S.E.2d 405, 411 (Ct.App.2003) (plaintiff has the burden to prove each element of the cause of action).

**6.** *See Lundy v. Palmetto State Life Ins. Co.*, 256 S.C. 506, 510, 183 S.E.2d 335, 337 (1971) (to establish a successful claim for fraud, plaintiff has the burden of proving reliance); *Sauner v. Pub. Serv. Auth. of South Carolina*, 354 S.C. 397, 581 S.E.2d 161, 166 (2003) (to establish a successful claim for negligent misrepresentation, plaintiff has the burden of proving reliance).