**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1506**

In Re: MARINE ENERGY SYSTEMS CORPORATION,

        Debtor.

-------------------------------------

W. RYAN HOVIS, Trustee for Marine Energy Systems
Corporation,

        Plaintiff – Appellant,

    v.

GENERAL DYNAMICS CORPORATION; ELECTRIC BOAT CORPORATION,

        Defendants – Appellees,

    and

SIEMENS WESTINGHOUSE POWER CORPORATION; VIACOM,
INCORPORATED,

        Defendants.

Appeal from the United States District Court for the District of
South Carolina, at Charleston. Patrick Michael Duffy, District
Judge. (2:06-cv-02483-PMD; BK-97-01929; AP-98-80220)

Argued: September 25, 2008      Decided: November 6, 2008

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge, and James
C. CACHERIS, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Thomas Scott Harty, LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C., Philadelphia, Pennsylvania, for Appellant.  Lawrence Scott Schaner, JENNER & BLOCK, Chicago, Illinois, for Appellees.  **ON BRIEF:** Steven E. Angstreich, Paul N. Bonavita, LEVY, ANGSTREICH, FINNEY, BALDANTE, RUBENSTEIN & COREN, P.C., Philadelphia, Pennsylvania, for Appellant.  George B. Cauthen, Jody A. Bedenbaugh, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina; Andrew W. Vail, JENNER & BLOCK, Chicago, Illinois, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

W. Ryan Hovis, the bankruptcy trustee for the estate of Marine Energy Systems Corporation ("MESC"), appeals the district court's order affirming the bankruptcy court's grant of summary judgment in favor of General Dynamics Corporation and Electric Boat Corporation (collectively "General Dynamics") on MESC's claims that General Dynamics used fraud and negligent misrepresentations to induce it to enter into an agreement to acquire the assets of General Dynamics' Charleston, South Carolina manufacturing facility. Both the bankruptcy court and the district court granted summary judgment to General Dynamics, concluding that the non-reliance provisions in the parties' Confidentiality Agreement and Asset Purchase Agreement ("APA") barred MESC's fraud and negligent misrepresentation claims. In his capacity as trustee, Hovis argues (1) that the APA's non-reliance provisions are insufficient to bar MESC's reliance on General Dynamics' allegedly fraudulent or negligent misrepresentations and (2) that the parole evidence rule and the APA's merger clause prohibit consideration of the terms of the Confidentiality Agreement to bar MESC's fraud and negligent misrepresentation claims. We disagree and affirm the district court's decision upholding the grant of summary judgment in favor of General Dynamics.

In the early 1970s, General Dynamics constructed a facility in Charleston, South Carolina to manufacture aluminum spherical cargo tanks for the transportation and storage of liquefied natural gas ("LNG"). The facility incorporated a proprietary manufacturing technology that enabled General Dynamics to finish construction of the LNG tanks at the Charleston facility and then deliver the tanks to shipyards where they could be loaded onto ships. The ability to construct a tank outside of the ship itself gave General Dynamics a substantial competitive advantage over other LNG tank builders who had to construct tanks directly on the ship — a much more difficult, costly, and time-consuming process. In 1980, however, General Dynamics suspended its LNG shipbuilding program and decided to put the Charleston facility to other uses, including building sections of nuclear submarines and producing waste treatment tanks, oil rigs, and hydrofoils.

In late 1993, General Dynamics decided to focus its resources on its core defense businesses and retained Goldman Sachs to help sell the assets of the Charleston facility. Goldman Sachs prepared a document ("Prospectus") that described the business opportunity presented by the Charleston facility. The Prospectus focused mainly on the possible resumption of the LNG tank manufacturing business, but also contained a short

section describing the possible use of the facility to manufacture barge-mounted power plants ("BMPPs").

Goldman Sachs required potential investors to execute and return a confidentiality agreement ("Confidentiality Agreement") before receiving a copy of the Prospectus. The Confidentiality Agreement included a non-reliance provision, which read as follows:

> We acknowledge that neither you, nor Goldman Sachs or its affiliates, nor your other Representatives, nor any of your or their respective officers, directors, employees, agents or controlling persons within the meaning of Rule 12b-2 under the Securities Exchange Act of 1934, as amended, makes any express or implied representation or warranty as to the accuracy or completeness of the information, and we agree that no such person will have any liability relating to the information or for any errors therein or omissions therefrom. We further agree that we are not entitled to rely on the accuracy or completeness of the information and that we will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

(J.A. at 620.)

In early 1994, New Charleston Capital ("NCC"), an investment firm based in Charleston, expressed interest in purchasing the assets of the Charleston facility, and entered into the Confidentiality Agreement. The Confidentiality Agreement was executed on behalf of NCC by William J. Gilliam, NCC's chairman and sole shareholder and a sophisticated businessman with extensive experience buying and selling

5

companies and making investments. After Gilliam received the Prospectus on behalf of NCC, he and other representatives of MESC, a South Carolina corporation created by NCC for the purpose of receiving the purchased assets, engaged in discussions with Goldman Sachs and General Dynamics. Gilliam was assisted in these negotiations by a well-known law firm, a major accounting firm, and a prominent investment banking firm, as well as in-house counsel. Ultimately, the negotiations led to the execution of the APA, dated June 10, 1994.

The APA provided that General Dynamics would sell and NCC would purchase "certain assets associated with [General Dynamics'] Charleston, South Carolina facility." (J.A. at 103.) The assets to be acquired were listed on schedules to the APA. In consideration for these assets, NCC agreed to pay General Dynamics $12 million at the closing as well as royalties on sales of LNG tanks and BMPPs.

Important to this appeal, Section 3.14 of the APA provided as follows:

> DISCLAIMER OF WARRANTIES. EXCEPT FOR THE SPECIFIC REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT, THE PURCHASED ASSETS WILL BE TRANSFERRED AT THE CLOSING IN "AS IS" CONDITION AS OF THE DATE HEREOF AND ALL OTHER REPRESENTATIONS AND WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY DISCLAIMED.

(J.A. at 112.)

6

Section 10.10 of the APA further provided:

> Entire Agreement. This Agreement (including the documents referred to herein) constitutes the entire agreement among the parties and supersedes any prior understandings, agreements or representations by or among the parties, written or oral, that may have related in any way to the subject matter hereof.

(J.A. at 127.)

On October 27, 1994, General Dynamics and NCC entered into an amendment to the APA, in which the parties endeavored to eliminate any possible uncertainty as to the identity of the assets that were the subject of the transaction, and the APA eventually closed on December 22, 1994. Upon closing, NCC transferred the purchased assets to MESC, whose sole shareholder and chairman was Gilliam. (MESC and NCC are collectively referred to hereafter as MESC.)

Subsequently, in 1997, MESC experienced difficulties and filed a petition for Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy after MESC's plan of reorganization failed. Hovis was appointed to act as the Chapter 7 Trustee.

Prior to the Chapter 7 conversion, on October 15, 1998, MESC filed an adversary proceeding against General Dynamics in the Bankruptcy Court for the District of South Carolina. The complaint sought to compel General Dynamics to turn over all intellectual property acquired under the APA and, in the

7

alternative, asked the court to reform the APA based on General Dynamics' alleged fraud, accident, or mistake in failing to include the intellectual property in the APA.  After the Chapter 7 conversion, in January 2000, MESC filed an amended complaint, asserting claims for breach of contract (for failure to turn over certain unidentified intellectual property), breach of the implied covenant of good faith, specific performance, fraud, and constructive fraud.  On June 26, 2003, MESC filed a "Third Amended Complaint," adding claims against General Dynamics for negligence, negligent misrepresentation, detrimental reliance, and conspiracy, and substantially expanding the allegations relating to its pre-existing breach of contract and fraud claims.

On October 13, 2004, the parties filed cross-motions for summary judgment.  The bankruptcy court, the Honorable William Thurmond Bishop presiding, heard oral argument on the motions and entered an order dated April 22, 2005, denying MESC's motion in its entirety and granting General Dynamics' motion with respect to the following claims:  breach of contract, breach of the implied covenant of good faith, specific performance, constructive fraud, negligence, detrimental reliance, and conspiracy.  The court, although it expressed "doubts as to whether MESC c[ould] prevail on its fraud claim," concluded that "there [we]re genuine issues of fact that preclude[d] the entry

of summary judgment" on both the fraud and negligent misrepresentation claims and denied General Dynamics' motion with respect to those claims. In re Hovis, 325 B.R. 158, 167-68 (Bankr. D.S.C. 2005) ("Hovis I").

On September 7, 2005, MESC amended its answers to General Dynamics' interrogatories in which MESC identified thirty-seven alleged misrepresentations. General Dynamics contended that MESC had previously asserted only nineteen of these misrepresentations and asked the court to bar MESC from presenting evidence at trial on the other eighteen "new" fraud allegations. The bankruptcy court denied General Dynamics' request and allowed General Dynamics to conduct limited discovery on these allegations.

On February 28, 2006, the case was reassigned to Judge John E. Waites following Judge Bishop's retirement, and on June 16, 2006, General Dynamics moved for summary judgment on MESC's "new" fraud allegations. On July 31, 2006, the bankruptcy court granted summary judgment in favor of General Dynamics on the "new" fraud allegations. The bankruptcy court concluded that each of the "new" fraud allegations was individually deficient in that each failed to state a claim of fraud or negligent misrepresentation, and that, in any event, "[b]ased upon the specific, unambiguous language of the Confidentiality Agreement and the APA, MESC could not reasonably rely on any

representation not made to it in the APA." In re Hovis, 362 B.R. 247, 275 (Bankr. D.S.C. 2006) ("Hovis II"); see also id. ("[T]here was a specific agreement by MESC not to rely and not to hold [General Dynamics] liable for any representations contained in the APA."). Thereafter, the parties stipulated that MESC's remaining fraud claims were barred by the court's decision because the representations at issue in those claims were also not made in the APA, and by a Stipulation of Dismissal, General Dynamics was awarded summary judgment on MESC's remaining fraud and negligent misrepresentation claims on August 7, 2006.

The district court affirmed the bankruptcy court's entry of summary judgment in favor of General Dynamics on the fraud and negligent misrepresentation claims, concluding that "[b]ased on the specific, unambiguous language of the Confidentiality Agreement and Sections 3.14 and 10.10 of the APA, MESC could not reasonably rely on any representation outside of the representations in the APA." In re Hovis, No. 2:06-2483-PMD, 2007 U.S. Dist. LEXIS 47151, at *54 (D.S.C. Apr. 18, 2007) ("Hovis III").

MESC timely appealed, and we have jurisdiction pursuant to 28 U.S.C.A. § 158(d) (West 2006 & Supp. 2008).

II.

"We review de novo a bankruptcy court's grant of summary judgment and a district court's affirmance thereof." In re Ballard, 65 F.3d 367, 351 (4th Cir. 1995). In an adversary proceeding in bankruptcy, summary judgment is governed by the standards of Federal Rule of Civil Procedure 56, see Fed. R. Bankr. P. 7056, and a court should award summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c).

On appeal, MESC argues that the district court erred in affirming the bankruptcy court's grant of summary judgment in favor of General Dynamics on MESC's claims of fraud and negligent misrepresentation. Specifically, MESC contends that the district court's conclusion that the terms of the Confidentiality Agreement and the APA bar MESC's claims is erroneous because the APA's terms alone are insufficient to bar MESC's reliance on General Dynamics' alleged misrepresentations and the Confidentiality Agreement may not be considered because the APA is an unambiguous, integrated contract.

Conversely, General Dynamics contends that the terms of both the Confidentiality Agreement and the APA independently bar MESC's reliance on any representations made outside of the APA

11

and that neither the parol evidence rule nor the APA's merger clause precludes the court's consideration of the terms of the Confidentiality Agreement. Alternatively, General Dynamics contends that it is entitled to summary judgment on MESC's claims of fraud and negligent misrepresentation because each allegation is flawed as a matter of law.

A.

As a preliminary matter, we note that neither party disputes that South Carolina law governs MESC's fraud and negligent misrepresentation claims. See In re Payless Cashways, 203 F.3d 1081, 1084 (8th Cir. 2000) ("The bankruptcy court applies the choice of law rules of the state in which it sits."); Witt v. American Trucking Ass'ns, Inc., 860 F. Supp. 295, 300 (D.S.C. 1994) (noting that "[i]n tort actions, South Carolina courts apply the law of the place where the wrong occurred" and that "[i]n a fraud action . . . the wrong occurs not where the alleged misrepresentations are made, but where the plaintiff suffers the loss").

Thus, to sustain its claim of fraud, MESC must prove:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely

thereon; and (9) the hearer's consequent and proximate injury.

Armstrong v. Collins, 621 S.E.2d 368, 375 (S.C. 2005) (citing Regions Bank v. Schmauch, 582 S.E.2d 432, 444-45 (S.C. Ct. App. 2003)) (emphasis added).

And, to sustain its negligent misrepresentation claim, MESC must show:

> (1) the defendant made a false representation to the plaintiff, (2) the defendant had a pecuniary interest in making the statement, (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the representation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

Id. (citing Brown v. Stewart, 557 S.E.2d 676, 680-61 (S.C. Ct. App. 2001)) (emphasis added).

Although both parties agree that South Carolina law controls the elements necessary to sustain MESC's claims, the parties disagree on what law we should apply to determine the effect of the non-reliance provisions in the Confidentiality Agreement and the APA. The Confidentiality Agreement states that it "will be governed by and construed in accordance with the laws of the State of New York applicable to contracts between residents of that State and executed in and to be performed in that State," (J.A. at 622), and the APA states that "[a]ll questions concerning the construction, validity and

13

interpretation of this Agreement . . . will be governed by the internal law, and not the law of conflicts, of the State of Delaware," (J.A. at 128). Although the bankruptcy court noted that "[c]ourts in [New York and Delaware] enforce the plain meaning of an unambiguous contract," it held that "South Carolina law determines whether MESC had a right to reasonably rely on the representations made to it." Hovis II, 362 B.R. at 272 n.35. The district court did not specifically find any error in the bankruptcy court's application of South Carolina law, but concluded that the result would be the same regardless of which state's law governed. See Hovis III, No. 2:06-2483-PMD, 2007 U.S. Dist. LEXIS 47151, at *39-*40 ("Thus, assuming the Bankruptcy Court erred in looking to South Carolina law to determine whether a court would give effect to these [non-reliance] provisions, such error was harmless as the court examined New York and Delaware law and determined the result to be the same regardless of which state's law governed."); id. at *40-*46 (applying New York law to the Confidentiality Agreement and concluding that "the Bankruptcy Court did not err in determining MESC did not have the right to rely on the alleged misrepresentations"); id. at *46-*49 ("[T]he court agrees with the Bankruptcy Court that Delaware courts would give effect to the provisions [of the APA] and find that MESC could not justifiably rely on MESC's alleged misrepresentations."); id. at

14

*49-*54 (applying South Carolina law to both the Confidentiality Agreement and the APA and concluding that "MESC could not reasonably rely on any representations outside of the representations in the APA").

On appeal, MESC, which argued before the district court that the bankruptcy court incorrectly applied South Carolina law to determine the effects of the agreements, has "chosen not to challenge" the application of South Carolina law. (Appellant's Reply Br. at 6.) On the other hand, General Dynamics, which argued before the district court that the bankruptcy court correctly applied only South Carolina law, now argues that New York law should control the effect of the Confidentiality Agreement and that Delaware law should control the effect of the APA. We need not resolve this choice of law issue because we, like the courts below, conclude that the result is the same regardless of whether South Carolina law controls the effects of the non-reliance provisions of the APA and the Confidentiality Agreement, or whether Delaware and New York law control the effects of the non-reliance provisions of the APA and the Confidentiality Agreement, respectively.

We first analyze MESC's arguments assuming that South Carolina law governs the effects of the Confidentiality Agreement and the APA.

In Redwend Ltd. P'ship v. Edwards, 581 S.E.2d 496 (S.C. Ct. App. 2003), the South Carolina Court of Appeals concluded that a merger clause which provided that "[e]ach party agrees that representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect," id. at 501, was not a non-reliance clause because it "neither include[d] the words 'rely' or 'reliance,' nor d[id] it set forth any statement that the parties did not, or could not, rely on the representations of the other party," id. at 502.

And, in Slack v. James, 614 S.E.2d 636 (S.C. 2005), the South Carolina Supreme Court concluded that the following merger and disclaimer provisions did not afford any protection to the sellers against the buyers' allegations of fraud and negligent misrepresentation:

> 21. ENTIRE AGREEMENT. This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller. It can only be changed by a subsequent written instrument (Addendum) signed by both parties. Both Buyer and Seller hereby acknowledge that they have not received or relied upon any statements or representations by either Broker or their agents which are not expressly stipulated herein.

Id. at 637. The court concluded that "[a]lthough the [last] sentence in [Paragraph 21] . . . use[d] the words 'relied upon,' this sentence [wa]s not a non-reliance clause," because the sentence was not set apart and it was "contained in a paragraph entitled, 'ENTIRE AGREEMENT,' which indicates that it [was] merely an extension of the merger clause." Id. at 640. Moreover, the court noted that even if the last sentence of Paragraph 21 could be considered a non-reliance clause, the buyers could still assert their claims of negligent misrepresentation and fraud because "[a] general non-reliance clause . . . does not prevent one from proceeding on tort theories of negligent misrepresentation and fraud" because to hold otherwise "would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate." Id. at 641 (internal quotation marks omitted).

MESC contends that, under Slack and Redwend, the non-reliance language of the APA alone, specifically the language contained in Sections 3.14 and 10.10, is insufficient to bar its claims of fraud and negligent misrepresentation. We need not determine the effectiveness of the APA's non-reliance provisions under South Carolina law to resolve the issue before us, however, because we conclude that the non-reliance language in

17

the Confidentiality Agreement alone is sufficient to bar MESC's claims.[1]

Paragraph 5 of the Confidentiality Agreement certainly qualifies as a non-reliance clause under both Slack and Redwend. First, it specifically uses the word "rely." Second, it states that MESC is "not entitled to rely" on the information in the Prospectus and that MESC would only be entitled to rely on the representations made in the APA. Third, it is more specific than either of the clauses in Slack or Redwend.

Moreover, "[i]t is undisputed that this was an ordinary commercial transaction between sophisticated parties." Hovis I,

---

[1] MESC argues that the parole evidence rule and the APA's merger clause prevent us from considering the terms of the Confidentiality Agreement in determining whether MESC's claims may go forward. But, in South Carolina, "[n]either the parol evidence rule nor a merger clause in a contract prevents one from proceeding on tort theories of negligent misrepresentation and fraud." Slack v. James, 614 S.E.2d 636, 640 (S.C. 2005); see also Gilliland v. Elmwood Props., 391 S.E.2d 577, 581 (S.C. 1990) ("The parol evidence rule has been held inapplicable to tort causes of action (including negligent misrepresentation) since the rule is one of substantive contract law. . . .We . . . hold that neither the parol evidence rule nor the merger or integration clause in the parties' contract prevents Elmwood from proceeding on its negligent misrepresentation theory."). Just as the parol evidence rule and the merger clause do not bar MESC's tort claims based on representations made before the APA was signed, the parol evidence rule and the merger clause likewise do not prevent the court from considering the terms of the Confidentiality Agreement in determining whether MESC had a right to rely on the alleged misrepresentations or whether MESC's reliance was justified—determinations that are made on the totality of the circumstances. Florentine Corp. v. Peda I, Inc., 339 S.E.2d 112, 114 (S.C. 1985); Redwend Ltd. P'ship v. Edwards, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003).

325 B.R. at 167. MESC was represented by a large, well-known law firm and assisted by investment bankers, a major accounting firm, and in-house counsel, and Gilliam, who executed the Confidentiality Agreement on behalf of MESC, was a highly experienced investment banker. Id. And, unlike the typical case in which the aggrieved party seeks to avoid a non-reliance clause in a contract entered into after the misrepresentations have been made, MESC signed the Confidentiality Agreement as a condition of receipt of the Prospectus and thus was put on notice that it could not rely on any future representations not contained in the parties' final agreement.

As such, we conclude that, applying South Carolina law, summary judgment in favor of General Dynamics is appropriate on MESC's fraud and negligent misrepresentation claims because MESC, a sophisticated entity, could not justifiably rely, and in fact did not have a right to rely, on any alleged misrepresentations not in the APA when it expressly agreed in the Confidentiality Agreement that it would not rely on those statements.[2] See Florentine Corp. v. Peda I, Inc., 339 S.E.2d

---

[2] Having concluded that MESC could not reasonably rely on any representation not made in the APA under the terms of the Confidentiality Agreement, we do not address whether each allegation of fraud and negligent misrepresentation is individually flawed as a matter of law. We note, however, that, in addition to asserting that General Dynamics' alleged misrepresentations induced it to enter into the APA, MESC also (Continued)

19

112, 114 (S.C. 1985) (noting that in cases involving allegations of fraud, "[t]he right to rely must be determined in light of the [Plaintiff]'s duty to use reasonable prudence and diligence under the circumstances" and that "[w]here there is no confidential or fiduciary relationship and an arm's length transaction between mature, educated people is involved, there is no right to rely"); Ama Mgmt. Corp. v. Strasburger, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992) (noting that in an action in tort for negligent misrepresentation, "[t]here is no liability where information is furnished with a clear understanding that the defendant assumes no liability for its accuracy").

C.

In the alternative, we conclude that, even assuming that Delaware law determines the effect of the APA and that New York

---

alleges that, in Paragraph 2.1 of the APA, General Dynamics misrepresented what assets it would deliver under the agreement. Like MESC's other contentions, this argument is without merit. The bankruptcy court rejected this argument, noting that it had already granted summary judgment to General Dynamics on MESC's breach of contract claim. In re Hovis, 362 B.R. 247, 270 (Bankr. D.S.C. 2006) ("Hovis II"). We find no error with the bankruptcy court's conclusion that MESC may not now "make an end run around that ruling by repackaging a breach of contract claim as a claim for misrepresentation." Id.; see Vann v. Nationwide Ins. Co., 185 S.E.2d 363, 364 (S.C. 1971) (noting that "a mere violation of a contract will not support an allegation of fraud").

law governs the effect of the Confidentiality Agreement, summary judgment in favor of General Dynamics is still appropriate.

As discussed above, MESC contends that the non-reliance language of the APA alone is insufficient to bar its claims. MESC correctly notes that the Delaware Supreme Court has stated that "a merger clause does not preclude a claim based upon fraudulent misrepresentations." Norton v. Poplos, 443 A.2d 1, 6 (Del. 1982). But more recent Delaware decisions have read Norton as "turn[ing] importantly on the relatively unsophisticated nature of the parties involved in the case, [and] the fact that they were entering a simple real estate contract and did not bargain over the specific disclaimer language." Kronenberg v. Katz, 872 A.2d 568, 590 (Del. Ch. 2004). These more recent decisions have "consistently held that sophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for their decision to contract." H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 142 n.18 (Del. Ch. 2003); see also Great Lakes Chem. Corp. v. Pharmacia Corp., 788 A.2d 544, 556 (Del. Ch. 2001) ("To allow Great Lakes to assert, under the rubric of fraud, claims that are explicitly precluded by contract, would defeat the reasonable commercial expectations of the contracting parties and eviscerate the utility of written contractual agreements.

For those reasons, I conclude that in these circumstances, Delaware law permits explicit contract disclaimers to bar Great Lakes' fraud claims."). And, in Kronenberg, the Chancery Court concluded:

> [F]or a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract. The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims.

872 A.2d at 593.

In this case, MESC (represented by a team of commercially experienced businessmen) and General Dynamics negotiated the terms of the APA over a period of months. Section 10.10, the merger clause, specifically states that the APA "supersedes any prior understandings, agreements or representations by or among the parties, written or oral, that may have related in any way to the subject matter hereof," (J.A. at 127) (emphasis added), and Section 3.14 provides that, "except for the specific representations . . . set forth in the agreement, the purchased assets will be transferred at the closing in 'as is' condition . . . and all other representations . . . are . . . expressly

22

disclaimed." (J.A. at 112.) We think that, "when read together," these provisions "can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." Kronenberg, 872 A.2d at 593. And, given the sophisticated nature of the parties to the APA, we agree with the district court that Delaware courts would find that MESC could not justifiably rely on, and in fact had no right to rely on, any representations not contained in the APA itself. Thus, if we apply Delaware law to determine the effect of the APA's non-reliance provisions, we conclude that summary judgment in favor of General Dynamics is appropriate on MESC's fraud and negligent misrepresentation claims based solely on Sections 3.14 and 10.10 of the APA, and we have no need to consider the effect of the terms of the Confidentiality Agreement under New York law.

Moreover, even assuming that, under Delaware law, the APA's non-reliance provisions are ineffective to bar MESC's claims, MESC's claims would still be barred because Paragraph 5 of the Confidentiality Agreement is a valid non-reliance clause under New York law. It is well-settled in New York that "[u]nlike a general merger clause, a specific written disclaimer will vitiate an allegation that one party reasonably relied on alleged misrepresentations of the other party in executing a

23

contract," CFJ Assocs. of N.Y., Inc. v. Hanson Indus., 711 N.Y.S.2d 232, 235 (N.Y. App. Div. 2000), and we find this rule particularly applicable where as here a commercially sophisticated party agrees, prior to entering negotiations, that it will not rely on any representations except those made in the final agreement.[3]

## III.

For the foregoing reasons, we affirm the grant of summary judgment to General Dynamics on MESC's fraud and negligent misrepresentation claims.

AFFIRMED

---

[3] We note that New York law also provides that "even where the parties have executed a specific disclaimer of reliance on a seller's representations, a purchaser may not be precluded from claiming reliance on any oral misrepresentations if the facts allegedly misrepresented are peculiarly within the seller's knowledge." Comi v. Breslin & Breslin, 683 N.Y.S.2d 345, 349 (N.Y. App. Div. 1999). This rule is inapplicable here because MESC agreed that it would not rely on any representations made by General Dynamics, including those involving facts peculiarly within General Dynamics' knowledge, unless the representations were included in the final agreement, the APA. None of the alleged misrepresentations are included in the APA.