**In re W. Ryan HOVIS, Trustee for Marine Energy Systems Corporation, Debtor.**

**W. Ryan Hovis, Trustee for Marine Energy Systems Corporation, Plaintiff–Appellant,**

**v.**

**General Dynamics Corporation, Electric Boat Corporation, Seimens Westinghouse Power Corp., and Viacom, Inc., Appellees–Defendants.**

**C.A. No. 2:06–2483–PMD.**
**Bankruptcy No. 97–01929–JW.**
**Adversary No. 98–80220–JW.**

United States District Court,
D. South Carolina.

April 18, 2007.

Stephen Elliott Gonzales, North Charleston, SC, Steven Angstreich, Levy, Angstreich, Finney, Thomas S. Harty, Philadelphia, PA, for Debtor/Plaintiff–Appellant.

Paul N. Bonavita, Levy Angstreich, Philadelphia, PA, W. Ryan Hovis, Rock Hill, SC, for Plaintiff–Appellant.

George Barry Cauthen, Jody A. Bedenbaugh, Nelson, Mullins, Riley and Scarborough, Columbia, SC, Lawrence S. Schaner, Richard T. Franch, Susan C. Levy, Jenner & Block, LLC, Chicago, IL, Charles Pelot Summerall, IV, Buist, Moore, Smythe & McGee, PA, Charleston, SC, for Appellees–Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Plaintiff's ("Plaintiff" or "Appellant") ap-

peal of the final Orders entered by the United States Bankruptcy Court for the District of South Carolina on July 31, 2006 and August 7, 2006, and the interlocutory Order of the Bankruptcy Court dated April 22, 2005 rendered final by the other two orders. Appellees General Dynamics Corporation and Electric Boat Corporation have timely responded to this Appeal.[1]

## BACKGROUND

In 1994, Defendants entered into an asset purchase agreement ("APA") with New Charleston Capital, Inc., for the sale of certain assets to New Charleston. After the agreement was executed, New Charleston Capital assigned its rights to Marine Energy Systems Corporation ("MESC"). Under the agreement, MESC contracted to acquire the assets necessary to run General Dynamics' liquefied natural gas ("LNG") and barge mounted power plant businesses ("BMPP").

In March 1997, MESC filed for bankruptcy. MESC filed a plan of reorganization, and the Bankruptcy Court confirmed the plan on July 2, 1998. The plan failed, and on November 19, 1998, the bankruptcy was converted into a Chapter 7 case. W. Ryan Hovis, Plaintiff, is serving as trustee.

On October 15, 1998, prior to the conversion, Plaintiff filed an adversary proceeding against General Dynamics. This complaint sought to compel General Dynamics to turn over all intellectual property purchased under the APA as well as a reformation of the APA based on General Dynamics' alleged fraud, accident, or mistake in omitting certain language concerning intellectual property from the APA. Plaintiff filed an Amended Complaint on January 28, 2000, in which he raised additional claims including breach of contract, breach of the implied covenant of good faith, and fraud. In June of 2003, the Bankruptcy Court again allowed Plaintiff to amend his complaint. In this amendment, Plaintiff joined Westinghouse and Viacom as Defendants.[2] Plaintiff also added claims against General Dynamics for negligence, negligent misrepresentation, detrimental reliance, and conspiracy. Furthermore, the Amended Complaint expanded the allegations in MESC's existing breach of contract and fraud claims.

On October 13, 2004, the parties filed cross-motions for summary judgment. The court heard oral argument on the motions in February of 2005, the Honorable William Thurmond Bishop presiding. Judge Bishop entered an order dated April 22, 2005, in which the court denied Plaintiff's motion in its entirety but granted General Dynamics' motion with respect to the following claims: breach of contract, breach of the implied covenant of good faith, specific performance, constructive fraud, negligence, detrimental reliance, and conspiracy. The court denied General Dynamics' motion with respect to MESC's claims for fraud and negligent misrepresentation.

On September 7, 2005, Plaintiff amended his answers to General Dynamics' interrogatories in which Plaintiff identified thirty-seven alleged misrepresentations. Plaintiff states these "answers further specified the representations made by General Dynamics that Plaintiff considered to be false as revealed by the discovery." (Pl.'s Br. at 7.) General Dynamics states Plaintiff previously asserted nineteen of these misrepresentations but that eighteen

---

**1.** In this Order, the court will refer to General Dynamics Corporation and Electric Boat Corporation collectively as "General Dynamics" or "Defendants." Defendants Siemens Westinghouse Power Corp. ("Westinghouse") and

Viacom, Inc. ("Viacom") were previously dismissed from the lawsuit.

**2.** Westinghouse and Viacom are no longer Defendants. *See supra* note 1.

were "brand new." (Defs.' Br. at 4.) General Dynamics sought to bar MESC from presenting evidence at trial on these "new" fraud allegations, but Judge Bishop denied this request and allowed General Dynamics to conduct limited discovery on these allegations.

On February 28, 2006, the case was reassigned to Judge John E. Waites following the retirement of Judge Bishop. General Dynamics moved for summary judgment on MESC's new fraud allegations on June 16, 2006. In an Order dated July 31, 2006, Judge Waites granted General Dynamics' Motion for Summary Judgment and dismissed Plaintiff's new fraud allegations. Based on the July 31 Order, Plaintiff acknowledged his remaining fraud claims were barred by the court's decision.[3] By Stipulation of Dismissal dated August 7, 2006, Plaintiff's remaining fraud and negligent misrepresentation claims against General Dynamics were dismissed. On August 9, MESC filed a notice of appeal in which it sought review of the following orders: April 22, 2005; July 31, 2006; and August 7, 2006.

### STANDARD OF REVIEW

#### A. Standard of Review of The Bankruptcy Court's Orders

Under 28 U.S.C. § 158(a), United States District Courts have jurisdiction to hear appeals of final judgments, orders, and decrees of Bankruptcy Courts. On appeal from the Bankruptcy Court, the district court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error, while it reviews the conclusions of law *de novo*. *Devan v. Phoenix Am. Life Ins. Co. (In re Merry-*

*Go-Round Enters., Inc.)*, 400 F.3d 219, 224 (4th Cir.2005); *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir.2001). The Bankruptcy Court's grant of summary judgment is reviewed *de novo* under Rule 56 of the Federal Rules of Civil Procedure. *Tidewater Fin. Co. v. Williams*, 341 B.R. 530, 533 (D.Md.2006) (citing *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.2000)). The district court may affirm, modify, or reverse a Bankruptcy Judge's order, or remand with instructions for further proceedings. *See* Fed. R. Bankr.P. 8013. The court has reviewed the file and determines that oral argument is not necessary. *See* Fed. R. Bankr.P. 8012 ("Oral argument shall be allowed in all cases unless the district judge ... determine[s] after examination of the briefs and record, or appendix to the brief, that oral argument is not needed.").

#### B. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).[4] The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole

---

**3.** The parties agreed the July 31 Order barring Plaintiff's new fraud allegations because of the non-reliance provisions in the Confidentiality Agreement and APA would also be applicable to Plaintiff's remaining fraud and negligent misrepresentation claims.

**4.** Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. *See* Fed. R. Bankr.P. 7056.

could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## ANALYSIS

Plaintiff appeals three of the Bankruptcy Court's orders. Before addressing Plaintiff's arguments, a review of the relevant portions of those orders is necessary.

### A. Order Dated April 22, 2005

In his Order dated April 22, 2005, Judge Bishop denied Plaintiff's Motion for Summary Judgment in its entirety but granted General Dynamics' Motion for Summary Judgment with respect to the following claims: breach of contract, breach of the implied covenant of good faith, specific performance, constructive fraud, negligence, detrimental reliance, and conspiracy. The court denied General Dynamics' Motion for Summary Judgment with respect to MESC's claims for fraud and negligent misrepresentation. At issue on appeal is the Bankruptcy Court's grant of summary judgment with respect to Plaintiff's breach of contract claims.

The Bankruptcy Court first found MESC's claim for breach of contract was barred by judicial estoppel. The court noted the following rule: "under the doctrine of judicial estoppel, a Chapter 11 debtor's failure to disclose a claim in its Schedules or Disclosure Statement bars the debtor from litigating that claim after confirmation of a plan of reorganization." (*See* Apr. 22, 2005 Order at 9.) As MESC did not disclose its claim until after the plan had been confirmed, the court held MESC's claim for breach of contract was barred. The court noted that while MESC alleged it did not learn of its purported claims until after confirmation, Saul Gliserman's deposition testimony negated that allegation. Mr. Gliserman, MESC's former general counsel, testified at his deposition that MESC was aware as early as 1995 that it had not received assets it contends it should have received under the APA.

Plaintiff asserted General Dynamics breached four provisions of the APA: § § 2.1(d), 2.1(b), 2.1(e), and 3.5. The Bankruptcy Court found that with respect to § § 2.1(d), 2.1(b), and 3.5, the court had additional grounds for granting summary judgment. MESC alleged General Dynamics breached § 2.1(d) by failing to turn over all intellectual property purchased under the APA. Although it was undisputed that General Dynamics turned over all assets listed on Schedule 2.1(d), MESC contends that it purchased intellectual property above and beyond the assets listed on that schedule. The court found this argument to be without merit, noting an Amendment dated October 24, 1994 indicated the parties agreed the only assets purchased pursuant to the APA were assets listed on a schedule.

MESC argued General Dynamics breached § 2.1(b) of the APA by failing to deliver the proposals listed on Schedule 2.1(b) of the agreement. This schedule listed 14 budgetary estimates and a letter of understanding. The court noted the undisputed evidence revealed General Dynamics physically delivered all of these documents to MESC. While MESC alleged General Dynamics breached the APA by cancelling budgetary estimates, the court stated no evidence existed of such an occurrence. The court further stated, "In any event, it is irrelevant whether General Dynamics cancelled the budgetary estimates because they were intended to remain in effect only for limited periods of time and they would have expired prior to the APA closing." (Apr. 22, 2005 Order at 11.)

MESC also contended General Dynamics breached § 3.5 of the APA because some items of intellectual property listed on Schedule 2.1(d) were jointly developed by General Dynamics and Westinghouse pursuant to the Memorandum of Understanding; this joint development meant Westinghouse also had the right to use those assets. The court noted that in § 3.5, General Dynamics represented the intellectual property was "free and clear of any Lien" and that "Seller has not received any notice or infringement of or conflict with asserted rights of others." (Apr. 22, 2005 Order at 12.) The court found no breach of this section because General Dynamics did exactly as it promised: it sold, transferred, conveyed, and delivered to MESC all of its right, title, and interest in and to the purchased assets.

## B. Order Dated July 31, 2006

The Bankruptcy Court's Order dated July 31, 2006 concerned Plaintiff's claims for fraud and negligent misrepresentation. The court noted Plaintiff contended Delaware law governed these claims pursuant to a choice-of-law clause in the APA. (*See* July 31 Order at 5.) The Bankruptcy Court disagreed, however, finding South Carolina law governed these two causes of action. The court then addressed each of the eighteen new fraud allegations and found each one defective as a matter of law. Plaintiffs also contended Defendants' arguments of judicial estoppel and *res judicata* relating to the non-reliance clause were barred by the law of the case doctrine because the court previously did not grant summary judgment to Defendants as to certain tort allegations based on these arguments. Noting the April 22 order was interlocutory, the court found that it had discretion to reconsider this earlier ruling and that the law of the case doctrine did not bar Defendants' remaining defenses. Judge Waites also determined Plaintiff's new fraud allegations were barred by non-reliance provisions in the Confidentiality Agreement and the APA.

## C. Order Dated August 7, 2006

In an Order dated August 7, 2006, the court granted summary judgment in favor of General Dynamics on all of Plaintiff's remaining fraud and negligent misrepresentation claims. The parties stipulated that the July 31 Order finding the non-reliance provisions of the Confidentiality Agreement and the APA barred Plaintiff's new fraud allegations would also be applicable to all remaining fraud and negligent misrepresentation claims in the case.

## D. The Appeal

### 1. The April 22, 2005 Order

With respect to the April 22 Order, Appellant first argues the Bankruptcy Court erred as a matter of law in dismissing his breach of contract claim. He makes two arguments in support of his position:

(1) The doctrines of *res judicata* and judicial estoppel did not preclude Plain-

tiff from instituting suit against General Dynamics for breach of contract.

(2) The Bankruptcy Court abused its discretion and erred as a matter of law in dismissing Plaintiff's breach of contract claims against General Dynamics by finding Plaintiff failed to demonstrate that General Dynamics failed to turn over assets purchased by MESC under the APA.

(*See* Pl.'s Br. at 25–26, 30.) Defendants argue the Bankruptcy Court correctly granted summary judgment on this cause of action because MESC did not disclose the existence of its alleged claim prior to the confirmation of its plan of reorganization. (Defs.' Br. at 14.) Defendants noted that while MESC asserted it learned of this claim only after confirmation, its former general counsel "admitted to participating in numerous conversations regarding MESC's alleged contract claims in 1995 and 1996." (Defs.' Br. at 14.)

Although Plaintiff fervently argues the doctrine of *res judicata* does not preclude his suit against General Dynamics for breach of contract, the Bankruptcy Court did not find Plaintiff's claim barred by that doctrine. Instead, the Bankruptcy Court found Plaintiff's claim for breach of contract barred by judicial estoppel. (*See* Apr. 25 Order at 9.)

■ "Judicial estoppel is an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." *Folio v. City of Clarksburg, W. Va.*, 134 F.3d 1211, 1217 (4th Cir.1998) (citing *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir.1995)). For judicial estoppel to apply, the following four elements must be present:

(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation;

(2) the position must be one of fact, rather than law or legal theory;

(3) the prior position must have been accepted by the court in the first proceeding; and

(4) the party to be estopped must have acted intentionally, not inadvertently.

*Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 292 (4th Cir.1998) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996)). Pursuant to this doctrine, some courts have found that a debtor's failure to list the claim in his schedules or disclosure statements bars the claim. For example, in *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570 (1st Cir.1993), the United States Court of Appeals for the First Circuit found plaintiffs' claims barred. *Payless*, 989 F.2d at 571. Payless had previously filed for bankruptcy, and "[i]n no filing did Payless even vaguely refer to [its] present claims, or distinguish the one defendant mentioned from its other creditors, yet Payless now alleges the bankruptcy was 'a direct result of the conspiratorial acts of defendants.'" *Id.* The court noted that "[e]ven a cursory examination of the claims shows that defendants should have figured in both aspects of the Chapter 11 proceedings, and that Payless could not have thought otherwise." *Id.* Because Payless failed to reveal its claim to the bankruptcy court, the claim was now barred:

The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively.

Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis.

*Id.* (citation omitted).

The United States Court of Appeals for the Third Circuit reached a similar result in *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.1988). In that case, Oneida appealed the dismissal of its claims against a secured creditor. *Oneida,* 848 F.2d at 415. Oneida entered into a loan agreement in which the bank would extend up to five million dollars through loans and letters of credit. *Id.* When a dispute arose between Oneida and another company, Oneida settled the dispute and called upon the bank to pay certain outstanding letters of credit. *Id.* The bank did not charge against these letters of credit, however; it withdrew the funds from Oneida's account. *Id.* As a result, Oneida was frequently overdrawn. *Id.* When Oneida's owner refused to personally guarantee Oneida's debt, the bank stopped honoring Oneida's checks, which allegedly forced Oneida to file for bankruptcy protection. *Id.* The bankruptcy proceedings required Oneida to pay the bank in excess of seven million dollars. *Id.*

Approximately seven months after the bankruptcy court confirmed Oneida's reorganization plan, Oneida filed suit against the bank, alleging "breaches of the credit agreements, of the parties' course of dealing and of the bank's duty of good faith." *Id.* at 416. The district court dismissed the complaint, however, holding "that since Oneida's claims against the bank arose from the same series of transactions which were the subject of extensive prior bankruptcy proceedings, its failure to bring this particular claim to the bankruptcy court's attention violated fundamental principles of preclusion and barred Oneida from pro-

ceeding with the action." *Id.* The Third Circuit affirmed, stating

Disclosure is important, in this case, not only to the bank as an adversary and as a creditor, but to the other creditors and the bankruptcy court. Here, "the silence" in Oneida's bankruptcy record concerning this present claim, as they say in the vernacular, "is deafening." In Schedule A–2 of its Statement of Financial Affairs as required by [11 U.S.C.] § 521, Oneida acknowledged its debt to the bank in the amount of approximately 7.7 million dollars, without any mention of a setoff. The debt to the bank in part represented principal and interest due on the lending agreements, the alleged breach of which Oneida now seeks to place at issue. . . .

. . . .

In order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding the finality of plans which they have voted to approve, we hold that under the facts here present Oneida's failure to announce this claim against a creditor precludes it from litigating the cause of action at this time.

*Id.; see also U.S. ex rel. Gebert v. Transport Admin. Servs.,* 260 F.3d 909, 917–18 (8th Cir.2001) (upholding the district court's finding that employees were judicially estopped from asserting a claim against their former employer because they had represented to the bankruptcy court, through their failure to disclose the claim, that they did not possess the claim); *Monroe County Oil Co. v. Amoco Oil Co.,* 75 B.R. 158, 162 (S.D.Ind.1987) (holding equitable estoppel barred the plaintiff's claims because "[a]ll of the claims of the amended complaint were in existence during the bankruptcy proceedings, yet [the plaintiff] did not disclose any of the claims in its bankruptcy petitions, plans of reorganization or disclosure statements");

*USinternetworking, Inc. v. Gen. Growth Mgmt., Inc. (In re USinternetworking, Inc.),* 310 B.R. 274, 286 (Bankr.D.Md.2004) (finding judicial estoppel prevented plaintiff from bringing claim it did not disclose in its bankruptcy reorganization case).

■ The Bankruptcy Court found judicial estoppel barred Plaintiff's breach of contract claim because MESC did not disclose its claim against General Dynamics until after the plan of reorganization had been confirmed. On appeal, Plaintiff argues the Bankruptcy Court erred in finding judicial estoppel barred his action against General Dynamics because MESC could not have disclosed its claim against General Dynamics, as it was unaware General Dynamics had not turned over assets purchased under the APA until after the reorganization plan was confirmed. (Pl.'s Br. at 27.) Plaintiff argues the Bankruptcy Court should not have granted summary judgment to General Dynamics on the breach of contract claim because (1) the parties were aware MESC did not take possession of certain assets at closing and (2) the time frame of when MESC actually discovered General Dynamics' intentions with respect to turning over the assets is in dispute. (Pl.'s Br. at 27–30.)

While Plaintiff asserts MESC had no knowledge of the potential breach of contract claim against General Dynamics until August of 1998, when it demanded that General Dynamics turn over the intellectual property purchased under the APA, Plaintiff has presented no such evidence. Defendants, on the other hand, have produced evidence that MESC was aware of its claim against General Dynamics in 1995 or 1996. Specifically, Defendants produced evidence that MESC was concerned that it did not receive all the assets it purchased under the APA as early as 1995 or 1996. Saul Gliserman, MESC's former general counsel, testified at his deposition that he attended a meeting in Orlando, Florida, either in 1995 or 1996, in which Bill Gilliam, MESC's sole shareholder and chairman, expressed concern that General Dynamics failed to turn over all of the assets purchased in the APA.[5]

5. Mr. Gliserman testified as follows at his deposition:

Q. Was it communicated to you by persons at MESC that certain property that should have been turned over under the Asset Purchase Agreement was not turned over?
A. I was present when statements were made in the presence of third parties by people from MESC about assets that were not forthcoming from General Dynamics.
Q. When did those statements get made?
A. Well, it would have been sometime following the closing and—
Q. Who was present at the time?
A. Well, I can recall conversations about this issue when Greg Snyder from Westinghouse would have been there.
Q. How many conversations on the subject of assets that were not turned over do you recall?
A. I think it would be impossible for me to try to recall how many, but there were many.
. . . .

Q. Can you remember any particular instance where the subject of assets that were not turned over by General Dynamics came up?
. . . .
A. I can recall being at a meeting at a Westinghouse in Florida and Gregg Meyers was—not Gregg Meyers—Gregg—
Q. Snyder?
A. —Snyder was there. Bill Gilliam was there, Jim Ewart was there. . . . And I do recall Bill Gilliam emphasizing that issue.
Q. What did Mr. Gilliam say?
A. He expressed great unhappiness and concern over what he said was the failure of MESC (sic) to provide all of the intellectual property it was required to furnish under the terms of the agreement. And my best specific recollection is that it had to do with antivibration technology.
Q. Now, you just said there was a failure of MESC to provide—
A. I'm sorry. I misstated. A failure of General Dynamics to furnish all of the intellectual property it was required to furnish

Despite Plaintiff's arguments, the court finds no error in the Bankruptcy Court's grant of summary judgment to General Dynamics on Plaintiff's breach of contract claims. While Plaintiff argues summary judgment is not appropriate because it had no knowledge of its potential claim until after the reorganization plan had been confirmed, the court finds there is no genuine issue of material fact. Other than Plaintiff's assertions in his Brief, there is no evidence MESC was unaware of its claim. On the other hand, Defendants have presented detailed testimony recounting a specific meeting in Orlando, Florida, in which Gilliam expressed unhappiness that General Dynamics had not turned over all the intellectual property it was required to furnish pursuant to the APA.

In opposing Defendants' Motion for Summary Judgment, Plaintiff cannot rely merely on the assertions in his Brief to defeat the motion. Rule 56(e) of the Federal Rules of Civil Procedure states, in part,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There are no genuine issues as to the material facts that (1) MESC knew of its claim against General Dynamics before the reorganization plan was confirmed and (2) MESC did not disclose the claim prior to the plan's confirmation.

---

under the terms of the purchase of sale agreement—or Asset Purchase Agreement....

Q. Did he specifically reference antivibration technology?

A. I believe he did, yes.

Q. What did he say about the antivibration technology?

. . . .

A. ... My recollection is that Gilliam's unhappiness was that although General Dynamics was prepared to provide the technology in a way determined by General Dynamics, they were not transferring the technology.

Q. Did this conversation that you are referring to take place in Orlando in the presence of Westinghouse personnel?

A. Yes.

A. Did the conversation take place before or after the closing of the Asset Purchase Agreement?

A. After.

Q. Did the conversation take place before or after MESC filed for bankruptcy?

A. Before.

Q. Did Mr. Gilliam say specifically that he believed that General Dynamics was required to turn over the antivibration technology under the Asset Purchase Agreement?

A. Yes.

. . . .

Q. Did anyone else on MESC's side who attended the meeting say anything about antivibration technology?

A. I believe that Dave Nickerson was a firm supporter of Bill Gilliam's position. But I don't want to limit what I was hearing to that one specific meeting in Orlando. There were a lot of discussions about this issue.

. . . .

Q. When did the meeting with Westinghouse that you've been describing take place?

A. I really can't say with certainty. It was probably during 1995–'95, '96 time period when we were trying to put this deal with Pakistan together.

(Gliserman Dep. 63:12–71:4; Apr. 8, 2004.) Mr. Gliserman also indicated that MESC told General Dynamics, in either 1995 or 1996, that General Dynamics should have turned over the antivibration technology. (Gliserman Dep. 81:4–81:9.)

■ Because judicial estoppel is an equitable doctrine that falls within the lower court's discretion, this court reviews the Bankruptcy Court's decision to apply judicial estoppel for an abuse of discretion. *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196, 198 (4th Cir. 1998) ("As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court ... [W]e conclude that the district court was well within its discretion in applying judicial estoppel ...."). As previously noted, for judicial estoppel to apply, the following four elements must be present:

> (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation;
>
> (2) the position must be one of fact, rather than law or legal theory;
>
> (3) the prior position must have been accepted by the court in the first proceeding; and
>
> (4) the party to be estopped must have acted intentionally, not inadvertently.

*Havird Oil Co.*, 149 F.3d at 292. The first element is satisfied because MESC was aware of its breach of contract claim against General Dynamics but did not disclose it in its bankruptcy proceeding prior to the reorganization plan's confirmation. *See In re USinternetworking, Inc.*, 310 B.R. at 281–82. The second element is satisfied because MESC's claim against General Dynamics was a fact. *Id.* at 283. Because the Bankruptcy Court confirmed MESC's reorganization plan, MESC's position that it did not have a claim against General Dynamics was accepted by the Bankruptcy Court. *Id.* at 285. Lastly, while there is no evidence that the failure to list the claim was part of a surreptitious plan, the last element is satisfied because the uncontradicted evidence is that Gilliam was aware of MESC's breach of contract claim in 1995 or 1996.[6] *Id.* Because no genuine issues of material fact exist with respect to this claim, and because the elements of judicial estoppel are satisfied, the court finds the Bankruptcy Court properly granted summary judgment to General Dynamics on the breach of contract claim.[7]

### 2. The July 31, 2006 Order

Plaintiff argues the Bankruptcy Court made the following errors in its July 31, 2006 order:

> (1) The Bankruptcy Court erred in failing to apply the law of the case doctrine to General Dynamics' argument that Plaintiff's fraud and misrepresentation claims were barred by the anti-reliance provisions of the APA and Prospectus;
>
> (2) The Bankruptcy Court erred in concluding the anti-reliance provision of the Prospectus and the integration clause of the APA precluded Plaintiff's reliance on General Dynamics' representations in the Prospectus in support of his fraud and misrepresentation claims; and
>
> (3) The Bankruptcy Court abused its discretion and erred as a matter of law in granting summary judgment in favor of General Dynamics on Plaintiff's fraud and negligent misrepresentation claims.

(Pl.'s Br. at 35, 37, 42.)[8]

---

**6.** Plaintiff disputes this fact but puts forth no evidence to support his contention that MESC was unaware of its breach of contract claim against General Dynamics until after the reorganization plan had been confirmed.

**7.** Finding the Bankruptcy Court did not err in determining Plaintiff's breach of contract claims were barred by judicial estoppel, the court does not reach Plaintiff's argument that the Bankruptcy Court erred in finding Plaintiff failed to demonstrate General Dynamics failed to turn over assets purchased by MESC under the APA.

**8.** Although Plaintiff refers to the Prospectus, the anti-reliance provision at issue appears in the Confidentiality Agreement.

### a. Law of the Case Doctrine

■ In the April 22, 2005 order, the Bankruptcy Court rejected General Dynamics' argument that Plaintiff's fraud and negligent misrepresentation claims were subject to dismissal based on the doctrines of *res judicata* and judicial estoppel. Plaintiff argues the Bankruptcy Court also implicitly rejected General Dynamics' contention that the non-reliance provisions in the Prospectus and APA defeated those claims. Plaintiff thus argues that although the April 22[9] order was interlocutory, Judge Waites erred in failing to apply the law of the case doctrine in the July 31 order. Plaintiff argues that pursuant to the law of the case doctrine, the Bankruptcy Court erred in concluding Plaintiff's fraud and negligent misrepresentation claims were barred by the anti-reliance provisions of the APA and Confidentiality Agreement.

■ In *American Canoe Association v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir.2003), the Fourth Circuit stated:

> [A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted. Said power is committed to the discretion of the district court, and doctrines such as law of the case ... have evolved as a means of guiding that discretion, *see Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir.1988) (noting that earlier decisions of a court become law of the case and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." (internal quotation marks omitted)).
>
> Law of the case is just that however[;] it does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.

*American Canoe Ass'n*, 326 F.3d at 514–15 (citations omitted).

■ On appeal, Plaintiff argues that in its July 31 Order, the Bankruptcy Court erred as a matter of law in failing to follow the April 22 Bankruptcy Court's decision in the absence of substantially different evidence, a change in controlling authority, or a demonstration of manifest injustice to General Dynamics. (*See* Pl.'s Br. at 36.) While the Fourth Circuit provided guidance in *Sejman* about law of the case, those three factors to which Plaintiff refers apply "when a decision of an appellate court establishes 'the law of the case.'" *Sejman*, 845 F.2d at 69. In the case *sub judice*, however, Plaintiff is arguing Judge Waites is required to follow the earlier ruling of Judge Bishop. As the United States District Court for the Eastern District of North Carolina noted, "just because a predecessor United States District Judge entered the order does not preclude [a different judge] from revisiting it." *Crain v. Butler*, 419 F.Supp.2d 785, 788 n. 1 (E.D.N.C.2005). Furthermore, the law of the case is a rule of discretion, and as the Fourth Circuit has said, it is the "ultimate responsibility" of the court to "reach the correct judgment under law." *American Canoe Ass'n*, 326 F.3d at 515; *see also Columbus–America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir.2000). Accordingly, the Bankruptcy Court did not err in failing to apply the

---

**9.** Both parties agree the April 22 order is interlocutory in nature. (*See* Pl.'s Br. at 35; Defs.' Br. at 43.)

law of the case doctrine to General Dynamics' argument that Plaintiff's fraud and misrepresentation claims were barred by the anti-reliance provisions of the APA and Confidentiality Agreement.

### b. The Anti–Reliance Provisions[10]

█ Plaintiff argues that if "the law of the case doctrine did not preclude the Bankruptcy Court from reconsidering General Dynamics' argument that the non-reliance provisions applied to Plaintiff's 'new fraud allegations,' the Court erred as a matter of law in concluding that the provisions were sufficient to dismiss Plaintiff's claims ..." (Pl.'s Br. at 37.) The Bankruptcy Court, in its July 31 Order, noted that in order to recover for fraud and negligent representation, Plaintiff must establish the right to rely on a representation. (*See* July 31 Order at 33.) In the July 31 Order, Judge Waites found summary judgment appropriate on Plaintiff's new fraud allegations because "[b]ased upon the specific, unambiguous language of the Confidentiality Agreement and the APA, MESC could not reasonably rely on any representation not made to it in the APA." (July 31 Order at 37.)

The relevant portion of the Confidentiality Agreement states,

> We acknowledge that neither you, nor Goldman Sachs or its affiliates, nor your other Representatives, nor any of your or their representative officers, directors, employees, agents or controlling persons within the meaning of Rule 12b–2 under the Securities Exchange Act of 1934, as amended, makes any express or implied representation or warranty as to the accuracy or completeness of the information, and we agree that no such person will have any liability relating to the information or for any errors therein or omissions therefrom. We further agree that we are not entitled to rely on the accuracy or completeness of the information and that we will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

(Ex. 9 to Defs.' Br. at ¶ 5.) The APA contains a provision entitled "Disclaimer of Warranties," which states,

> 3.14 *DISCLAIMER OF WARRANTIES.* EXCEPT FOR THE SPECIFIC REPRESENTATIONS, WARRANTIES AND COVENANTS SET FORTH IN THIS AGREEMENT, THE PURCHASED ASSETS WILL BE TRANSFERRED AT THE CLOSING IN "AS IS" CONDITION AS OF THE DATE HEREOF AND ALL OTHER REPRESENTATIONS AND WARRANTIES, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY DISCLAIMED.

---

**10.** Plaintiff also appeals the August 7, 2006 Order of the Bankruptcy Court. In that Order, the court granted summary judgment in favor of General Dynamics on all of Plaintiff's remaining fraud and negligent misrepresentation claims. The parties stipulated that the July 31 Order finding the non-reliance provisions of the Confidentiality Agreement and the APA barred Plaintiff's new fraud allegations would also be applicable to all remaining fraud and negligent misrepresentation claims in the case. Because the rationale regarding the anti-reliance provisions is identical whether examining the August 7 Order or the July 31 Order, the court does not separately discuss Plaintiff's appeal of the August 7 Order. For the reasons discussed in this Order, the court finds MESC could not justifiably rely on any representation not contained in the APA and that as a result, the Bankruptcy Court did not err in granting Defendants' Motion for Summary Judgment on the fraud and negligent misrepresentation claims.

(Ex. 11 to Defs.' Br. at § 3.14.) In a section entitled "Entire Agreement," the APA also states, "This Agreement (including the documents referred to herein) constitutes the entire agreement among the parties and supersedes any prior understandings, agreements or representations by or among the parties, written or oral, that may have related in any way to the subject matter hereof." (Ex. 11 to Defs.' Br. at § 10.10.)

In its July 31 Order, the Bankruptcy Court applied the law of South Carolina when addressing Defendants' argument that Plaintiff did not have the right to rely on the representations that constitute the new fraud allegations. The Bankruptcy Court noted, that pursuant to the terms of the Confidentiality Agreement and APA, New York law governs the construction and enforceability of the Confidentiality Agreement while Delaware law governs the construction and enforceability of the APA. The Bankruptcy Court found, however, that the law in both New York and Delaware provides for the enforcement of the plain meaning of an unambiguous contract. (*See* July 31 Order at 33–34 n. 35.)

On appeal, Plaintiff states, "[W]hile Plaintiff's claims are tort based, the issue of the construction and application of the anti-reliance provision of the Prospectus and the integration clause of the APA are contractual in nature. In this regard, South Carolina recognizes the doctrine of *lex loci contractus*, the law of the place where the contract is made, to determine contractual issues." (Pl.'s Br. at 37.) Plaintiff thus argues that because the Confidentiality Agreement and APA contain choice of law provisions, the Bankruptcy Court should have applied New York and Delaware law. (Pl.'s Br. at 38.) The relevant portion of the Confidentiality Agreement states, "This letter agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts between residents of that State and executed in and to be performed in that State." (Defs.' Br. Ex. 9 ¶ 11.) The relevant portion of the APA states, "All questions concerning the construction, validity and interpretation of this Agreement and the Exhibits and Schedules hereto will be governed by the internal law, and not the law of conflicts, of the State of Delaware." (Defs.' Br. Ex. 11 ¶ 10. 13.)

In *Glaesner v. Beck/Arnley Corp.*, 790 F.2d 384 (4th Cir.1986), the defendant argued the district court should have applied New York law instead of South Carolina law since the contract stated, "This Agreement is to be governed by and construed according to the laws of the State of New York." *Glaesner*, 790 F.2d at 386 n. 1. The Fourth Circuit, however, found the district court properly applied South Carolina law because the plaintiff alleged the defendant was liable in tort, rather than in contract, and "[u]nder South Carolina law, a cause of action for tort arises where the injury or wrongdoing occurs." *Id.* The court further stated that "[n]o issue of contractual construction, interpretation, or enforceability" was raised by the case. *Id.*

In *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42 (4th Cir.1983), an independent tire distributor brought suit against Michelin, alleging violations of the Sherman Act and the North Carolina Unfair Trade Practices Act. *Id.* at 46–47. A provision in the Dealer Sales Agreement stated, "The parties hereto intend this Agreement to be executed as a New York agreement and to be construed in accordance with the laws of the State of New York." *Id.* at 49 n. 11. Michelin argued that because of the provision, the law of New York, not the law of North Carolina, applied to the conduct at issue. *Id.* The Fourth Circuit found application of North Carolina law appropriate:

Federal courts, when exercising their diversity or pendent jurisdiction over state law claims, must of course, apply the choice of law rules applicable in the forum state. The district court in this action, then, would be bound to look to the choice of law rules applicable in North Carolina's state courts. We are satisfied that North Carolina's courts would apply N.C. Gen.Stat. § 75–1.1 to the facts presented here without regard to the presence of the contractual choice of law provision. The nature of the liability allegedly to be imposed by the statute is *ex delicto*, not *ex contractu*. No issue of contractual construction, interpretation, or enforceability is raised by this case. The liability alleged is predicated, rather, upon actions separate and distinct from the Dealer Sales Agreement itself.

*Id.* at 49 n. 11.

In the case *sub judice*, the Bankruptcy Court found MESC "could not reasonably rely on any representation not made to it in the APA" because of the "specific, unambiguous language of the Confidentiality Agreement and the APA." (362 B.R. 247, 275.) Thus, the Bankruptcy Court looked to the language of the Confidentiality Agreement and the APA to make this determination. While the Bankruptcy Court did cite South Carolina law in discussing the right to rely, the court also examined New York and Delaware law. In a footnote, the Bankruptcy Court stated, "Courts in [both New York and Delaware] enforce the plain meaning of an unambiguous contract." (362 B.R. at 272 n. 35.) Thus, assuming the Bankruptcy Court erred in looking to South Carolina law to determine whether a court would give effect to these provisions, such error was harmless as the court examined New York and Delaware law and determined the result to be the same regardless of which state's law governed.

In *CFJ Associates of New York Inc. v. Hanson Industries*, 274 A.D.2d 892, 711 N.Y.S.2d 232 (N.Y.App.Div.2000), the plaintiff appealed the lower court's dismissal of its cause of action for fraud. *Id.* at 234. "[T]he essence of plaintiff's cause of action for fraud is that defendants' actions in allegedly fraudulently concealing the actual estimated cost of the property cleanup induced plaintiff to enter into the contract and thereafter make expenditures to fulfill the contract in reliance on the cost estimates provided by defendants." *Id.* at 235. The court noted that in order to recover for fraud, the plaintiff must establish it "justifiably relied on" the misrepresentation. *Id.* The court found the plaintiff had no right to rely on any misrepresentations based on the contractual language:

Unlike a general merger clause, a specific written disclaimer will vitiate an allegation that one party reasonably relied on alleged misrepresentations of the other party in executing a contract. The contract of sale here specifically recited that plaintiff was a "sophisticated purchaser of industrial and commercial real estate," had retained its own environmental experts to review the environmental condition of the property and acknowledged that the property had been previously used for industrial purposes, including the storage of hazardous materials. It also stated that the seller "makes no representation or warranty regarding the accuracy, contents of any documents provided to plaintiff under the applicable environmental provisions." Most significantly, the contract contained plaintiff's acknowledgment that it would "rely upon its own experts in order to evaluate the environmental condition of the property and in order to make its own determination as to whether the property was suitable for plaintiff's needs." This specific contract

language *expressly negates* the element of reliance in plaintiff's attempted fraud claim.

*Id.* (emphasis added).

Plaintiff argues, however, that pursuant to New York law, MESC had a right to rely on General Dynamics' representations not contained in the APA. Plaintiff states, "Under New York law, an 'anti-reliance' provision will not include a [p]laintiff's subsequent reliance on [the] [d]efendants' misrepresentations where either the [d]efendant conceals a material fact which he or she is in good faith bound to disclose, or the misrepresented facts are peculiarly within the [d]efendant's knowledge." (Pl.'s Br. at 38.) Plaintiff cites *Comi v. Breslin & Breslin,* 257 A.D.2d 754, 683 N.Y.S.2d 345 (N.Y.App.Div.1999), for support.

*Comi* involved a stock purchase agreement; the stock purchase agreement contained a disclaimer that stated, "[t]he Buyer has been employed by the corporation as its Chief Operating Officer since March 29, 1993, and is fully familiar with the operations of the Corporation and its assets and liabilities, and consequently the Sellers are making no representations and warranties with regard to the business of the Corporation or its assets and liabilities." *Comi,* 683 N.Y.S.2d at 347. The purchaser subsequently wrote to the sellers, informing them he had learned of a concealment and would withhold payments until the agreements were adjusted to reflect the undisclosed liabilities. *Id.* After the sellers filed suit, the buyer agreed to buy the stock and give the sellers additional security for the price of the stock as well as a general release for his fraud claim. *Id.* at 348. The buyer then filed for bankruptcy and commenced an adversary proceeding seeking a judgment that the stock was property of the estate. *Id.* When the bankruptcy court ruled against him, he filed suit against the defendants for legal malpractice, alleging the defen-

dants were negligent in failing to discover the misrepresentations and failing to properly advise him. *Id.* The defendants then brought a third-party action against the sellers, who moved for summary judgment. *Id.* The lower court denied the sellers' motion, and the sellers appealed. *Id.* On appeal, the court noted,

> [I]t is well settled that a contract clause which specifically disclaims the buyer's reliance on representations of the seller usually negates the reliance on misrepresentation required to support a claim of fraudulent misrepresentation. However, where a party to an agreement conceals a material fact which he or she is in good faith bound to disclose, such silence may constitute an actionable misrepresentation. Moreover, even where the parties have executed a specific disclaimer of reliance on a seller's representations, a purchaser may not be precluded from claiming reliance on any oral misrepresentations if the facts allegedly misrepresented are peculiarly within the seller's knowledge.

*Id.* at 348–49 (citations omitted). Applying these rules, the court determined the lower court properly denied the sellers' motion for summary judgment because the plaintiff alleged "the financial records contained false entries that were made at a time when the [sellers] were in control of the corporation, and that these misrepresentations resulted in his inability to ascertain the corporation's true financial obligations." *Id.* at 349. The court thus found a question of fact as to whether the plaintiff could have determined the truth regarding the alleged concealment. *Id.*

█ Plaintiff is thus correct to argue that under New York law, a specific disclaimer of reliance *may* not preclude reliance where the facts allegedly misrepresented are peculiarly within the seller's knowledge. However, the court finds the

case *sub judice* more similar to *CFJ Associates* than *Comi.* Like the plaintiff in *CFJ Associates,* Gilliam is an experienced businessman. He served as vice-president in the mergers and acquisitions group of Lehman Brothers for approximately two years, and he helped form and was a partner in the entity Gilliam, Joseph, & Littlejohn, which was involved in the merchant banking business. (Gilliam Dep. 34:13–40:21; Jan. 20, 2004); *see also Hovis v. Gen. Dynamics Corp. (In re Hovis),* 325 B.R. 158, 167 (Bankr.D.S.C.2005). Moreover, the provision at issue is more than a general disclaimer; it is more specific than the disclaimer at issue in *Comi.* The anti-reliance provision in the case *sub judice* specifically provides there are no express or implied representations or warranties "as to the accuracy or completeness of the information." (Ex. 9 to Defs.' Br. at ¶ 5.) In addition, the Confidentiality Agreement *specifically states* that the signatories *"agree"* that they *"are not entitled to rely* on the accuracy or completeness of the information." (Ex. 9 to Defs.' Br. at ¶ 5 (emphasis added).) Lastly, the Confidentiality Agreement states the signatories "will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein." (Ex. 9 to Defs.' Br. at ¶ 5.) Plaintiff specifically agreed not to rely on any representations or warranties not contained in the "definitive agreement," the APA; given this agreement, the court finds the Bankruptcy Court did not err in determining MESC did not have the right to rely on the alleged misrepresentations. *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597, 604 (1959) ("[T]he plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral

representations. Plaintiff admits then that it is guilty of deliberately misrepresenting to the seller its true intention. To condone this fraud would place the purchaser in a favored position."); *Long v. Fitzgerald,* 240 A.D.2d 971, 659 N.Y.S.2d 544, 546 (N.Y.App.Div.1997) (finding the specific disclaimer destroyed the allegations of reliance on oral misrepresentations when the contract specifically afforded the plaintiffs the opportunity to inspect for defects and when they agreed to take the property "as is").

■ Plaintiff next argues the Bankruptcy Court erred by not applying Delaware law to determine the effectiveness of the APA's disclaimer. As previously noted, the Bankruptcy Court did examine Delaware law, albeit in a footnote, and found the anti-reliance provision effective. Plaintiff argues that "under Delaware law, merger and integration clauses alone are insufficient to preclude a [p]laintiff's claim for fraudulent misrepresentation." (Pl.'s Br. at 39.) Plaintiff is correct; as the Supreme Court of Delaware stated in *Norton v. Poplos,* 443 A.2d 1 (Del.1982), "a merger clause does not preclude a claim based upon fraudulent misrepresentations." *Norton,* 443 A.2d at 6; *see also Kronenberg v. Katz,* 872 A.2d 568, 593 (Del.Ch.2004) ("The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims.").

Although Plaintiff fervently argues the APA "does not contain an express or explicit anti-reliance clause, or any similar provision demonstrating with sufficient clarity that the Plaintiff could not rely on representations made by General Dynam-

ics outside the contract," Plaintiff overlooks section 3.14 of the APA. (Pl.'s Br. at 39.) This provision states the purchased assets "will be transferred at the closing in 'as is' condition" except for the "specific representations, warranties and covenants" set forth in the APA. (Ex. 11 to Defs.' Br. at § 3.14.) Furthermore, § 3.14 states that "all other representations and warranties ... are hereby expressly disclaimed." (Ex. 11 to Defs.' Br. at § 3.14.) As the Court of Chancery of Delaware stated in *Great Lakes Chemical Corp. v. Pharmacia Corp.*, 788 A.2d 544 (Del.Ch. 2001), allowing a plaintiff "to assert, under the rubric of fraud, claims that are explicitly precluded by contract, would defeat the reasonable commercial expectations of the contracting parties and eviscerate the utility of written contractual agreements." *Pharmacia*, 788 A.2d at 556; *see also Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, at *1 (Del.Ch. July 9, 2002) ("Progressive contractually agreed that it was not entering the License Agreement on the basis of extra-contractual representations by DuPont; as a result, it thereby acknowledged the unreasonableness of grounding its execution of the contract on statements of DuPont that were not included within the contract as binding legal promises."); *IBP, Inc. v. Tyson Foods, Inc. (In re IBP, Inc.)*, 789 A.2d 14, 73 n. 178 (Del.Ch.2001) (citing *Danann Realty Corp.*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597).

Thus, while a standard integration clause will not necessarily preclude Plaintiff's fraud claims, the case *sub judice* involves more than a standard integration clause. Section 3.14 of the APA states that all warranties and representations not contained within the APA are expressly disclaimed and that the assets are transferred "as is." (Ex. 11 to Defs.' Br. at § 3.14.) Given the specificity of § 3.14, the court agrees with the Bankruptcy Court

that Delaware courts would give effect to the provision and find MESC could not justifiably rely on MESC's alleged misrepresentations.

Finally, Plaintiff argues that "[a]ssuming *arguendo* that the Bankruptcy Court appropriately applied South Carolina law to this issue, the Court nevertheless misapplied the law relative to the facts at hand." (Pl.'s Br. at 40.) Plaintiff first asserts that in South Carolina, a plaintiff may rely on parol or extrinsic evidence "when attacking a contract on the basis of fraud and misrepresentation, especially when the contract contains a standard integration clause." (Pl.'s Br. at 40.) In *Redwend Limited Partnership v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct. App.2003), the Court of Appeals of South Carolina interpreted the following provision:

> 9. *Entire Agreement.* This Agreement contains the entire agreement and understanding by and between Edwards and the Partnership with respect to the subject matter hereof. All prior agreements and negotiations are merged herein, and if not set forth herein are duly waived. *Each party agrees that representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect.* No change or modification of this Agreement shall be valid or binding unless the same is in writing or signed by the party intended to be bound....
> (Emphasis added.)

*Id.* at 469, 581 S.E.2d at 501. The trial court determined the provision was a nonreliance clause, waiving either party's right to complain about the other party's representations not specifically set forth in the agreement, but the Court of Appeals of South Carolina held the provision to be "merely an extension of the merger clause." *Id.* at 469–70, 581 S.E.2d at 501–

02. The court examined language typically found in non-reliance clauses, *see Rissman v. Rissman,* 213 F.3d 381 (7th Cir. 2000), and found the language at issue in *Redwend* was much different:

> The language used in the case *sub judice* neither includes the words "rely" or "reliance," nor does it set forth any statement that the parties did not, or could not, rely on the representations of the other party. The clause merely provides that the prior "representations, promises, agreements or understandings, written or oral, not contained herein shall be of no force or effect" within the contract, thereby accomplishing the same purpose as a merger clause. We conclude the provision is not a non-reliance clause, but is merely a portion of the merger clause.

*Redwend,* 354 S.C. at 471, 581 S.E.2d at 502 (citation omitted).

The South Carolina Supreme Court addressed the same issue in *Slack v. James,* 364 S.C. 609, 614 S.E.2d 636 (2005). The provision at issue in *Slack* stated,

> 21. ENTIRE AGREEMENT. This written instrument expresses the entire agreement, and all promises, covenants, and warranties between the Buyer and Seller. It can only be changed by a subsequent written instrument (Addendum) signed by both parties. Both Buyer and Seller hereby acknowledge that they have not received or relied upon any statements or representations by either Broker or their agents which are not expressly stipulated herein.

*Id.* at 611–12, 614 S.E.2d at 637. The Supreme Court of South Carolina found this provision to be a merger clause, not a non-reliance clause. *Id.* at 617–18, 614 S.E.2d at 640–41. The court noted that while the provision used the words "relied upon," the sentence containing that phrase was in a paragraph entitled " 'ENTIRE AGREEMENT,' which indicates that [the sentence] is merely an extension of the merger clause." *Id.* at 617, 614 S.E.2d at 640. Because only one sentence concerned reliance and because this sentence was contained within the merger clause, the Supreme Court of South Carolina held the Court of Appeals correctly concluded the clause could not be used as a defense against fraud and negligent misrepresentation claims. *Id.* at 617–19, 614 S.E.2d at 640–41. The court also stated that even if the sentence were considered a non-reliance clause, "the result would be the same because as a non-reliance clause it lacks the required specificity." *Id.* at 618, 614 S.E.2d at 641.

The Bankruptcy Court examined both *Slack* and *Redwend* and held "[t]he combination of the Confidentiality Agreement and the APA[ ] clearly indicate that MESC lacked the right to rely on any representation not contained in the APA." (362 B.R. at 274.) This court agrees with the Bankruptcy Court. While a merger clause alone does not mean MESC did not have a right to rely on any representation not contained in the APA, the language of the Confidentiality Agreement and APA is, as the Bankruptcy Court noted, stronger and more specific than the language at issue in *Slack* and *Redwend.* Not only does the Confidentiality Agreement use the word "rely," that agreement specifically states the parties "will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement." (Ex. 9 to Defs.' Br. at ¶ 5.) In addition, the Confidentiality Agreement acknowledges no express or implied warranties exist as to the accuracy or completeness of information. (Ex. 9 to Defs.' Br. at ¶ 5.) Furthermore, the "Disclaimer of Warranties" section of the APA, § 3.14, is separate and distinct from the APA's merger clause in § 10.10. The "Disclaimer" section provides the assets are transferred "as is," with the exception of the specific

representations, warranties, and covenants set forth in the APA. The court thus agrees with the Bankruptcy Court. Based on the specific, unambiguous language of the Confidentiality Agreement and Sections 3.14 and 10.10 of the APA, MESC could not reasonably rely on any representation outside of the representations in the APA. The Bankruptcy Court thus properly granted summary judgment to Defendants on the fraud and negligent misrepresentation causes of action.[11]

## CONCLUSION

For the foregoing reasons, the court **ORDERS** that the Bankruptcy Court's Order dated April 22, 2005, granting summary judgment to Appellees on Appellant's breach of contract claims is hereby **AFFIRMED.** The court further **ORDERS** that the Bankruptcy Court's Orders dated July 31, 2006 and August 7, 2006, granting summary judgment to Appellees on Appellant's claims for fraud and negligent misrepresentation, are hereby **AFFIRMED.**

**AND IT IS SO ORDERED.**

---

11. In addition to granting summary judgment based on the anti-reliance provisions of the Confidentiality Agreement and the APA, the Bankruptcy Court also determined that the eighteen "new" fraud allegations were flawed as a matter of law. Plaintiff appeals this ruling, arguing the Bankruptcy Court ignored critical "and at the very least, hotly contested material facts in the record and misapplied the law to those facts, which would have warranted a denial of General Dynamics' Motion." (Pl.'s Br. at 42.) The court does not address this argument, however, as it finds the anti-reliance provisions of the Confidentiality Agreement and APA indicate MESC could not reasonably rely on any representation not made to it in the APA.